UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE LEON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Case No. ED CV 10-915 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff appeals a decision of Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he concluded that she could work as a cashier and when he rejected her's and her mother's testimony. For the reasons discussed below, the Agency's decision is affirmed.

## II. SUMMARY OF PROCEEDINGS

In 2005, Plaintiff applied for DIB and SSI, alleging that she was disabled due to fibromyalgia, chronic fatigue, chronic pain, irritable bowel syndrome, and depression. (Administrative Record ("AR") 100-03,

108, 112, 116, 132-50.)  The Agency denied the applications initially and on reconsideration.  (AR 40-41, 59-63, 66-70.)  She then requested and was granted a hearing before an ALJ.  (AR 39, 93-94.)  Plaintiff appeared with counsel and testified at the hearing on October 15, 2007.  (AR 331-56.)  The ALJ subsequently issued a decision denying benefits.  (AR 48-58.)  Plaintiff appealed to the Appeals Council, which granted review, vacated the ALJ's decision, and remanded the case to the ALJ for further proceedings.  (AR 45-47.)  On July 20, 2009, the ALJ held a second hearing.  (AR 357-90.)  Thereafter, he issued a second decision, again denying benefits.  (AR 9-21.) Plaintiff appealed to the Appeals Council, which denied review.  (AR 4-8.)  She then commenced this action.

## III. ANALYSIS

A. <u>The Credibility Findings</u>

   i. <u>Plaintiff</u>

The gist of Plaintiff's testimony was that she was, in essence, physically incapacitated as a result of pain and had difficulty thinking clearly because of her mental/emotional impairments.  (AR 132-59, 335-51.)  As a result, in her view, she was incapable of working at any job.  The ALJ found that her testimony was not credible.  (AR 20.)  Plaintiff argues that the ALJ erred in doing so. For the reasons explained below, the Court finds that the ALJ did not err.

ALJ's are tasked with judging the credibility of witnesses. Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, she can only reject the claimant's testimony for specific, clear, and convincing reasons.

*Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996).  In making a credibility determination, the ALJ may take into account ordinary credibility evaluation techniques as well as the claimant's daily activities.  *Id.* at 1284.

The ALJ cited several reasons for questioning Plaintiff's credibility.  (AR 20.)  He spoke in general terms of how her testimony was inconsistent with the medical record.  (AR 20.)  He explained that, while Plaintiff alleged constant pain throughout her body and an inability to sit for more than an hour-and-a-half, she elected to fly for "hours upon hours" to Jamaica for vacation.  (AR 20.)

This appears to be a specific, clear, and convincing reason for questioning Plaintiff's testimony.  It seems reasonable for an ALJ to question the testimony of a claimant who claims that she was incapable of sitting for more than an hour-and-a-half yet chose to sit for hours on an airplane to go on vacation.

Plaintiff disagrees.  She argues that the ALJ was exaggerating when he found that the plane ride lasted "hours and hours," since, as she testified, it lasted only five-and-a-half hours.  (Joint Stip. at 15.)  She points out further that she did not have to sit the whole time she was on the airplane and that she got up every 30 minutes to stretch.  (Joint Stip. at 15, citing AR 347.)

The Court does not find the ALJ's analysis lacking.  The Court cannot say that the ALJ's use of the term "hours and hours" as opposed to five-and-a-half hours mischaracterized the evidence.  Further, though Plaintiff claims that she got up every 30 minutes, the ALJ was not required to accept that testimony and clearly, he did not.  The relevant point is that the ALJ was skeptical about Plaintiff's claims that she could not sit for an hour-and-a-half when he learned that she

1  flew for five-and-a-half hours to go on vacation in Jamaica.  The ALJ
2  was allowed to consider this in evaluating Plaintiff's testimony and
3  the Court cannot say that he erred in doing so.  *See*, *e.g.*, *Tommasetti*
4  *v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding ALJ properly
5  inferred from claimant's ability to travel to Venezuela that he was
6  not as physically limited as he purported to be); *Smolen,* 80 F.3d
7  1283-84 (explaining ALJ can rely on ordinary credibility evaluation
8  techniques in assessing claimant's credibility).

9  　　　The ALJ also questioned Plaintiff's testimony when he learned
10 that she spent time on the beach in Jamaica.  (AR 20.)  In his view,
11 that was inconsistent with her claim that she constantly suffered from
12 disabling pain.  (AR 20.)  Plaintiff argues that the ALJ erred in
13 doing so because, as was explained at the hearing, the purpose of her
14 going in the ocean was to see if the water would help ease her pain.
15 (Joint Stip. at 16.)

16 　　　The Court does not find error here, either.  According to
17 Plaintiff, her pain is so debilitating that she is unable to walk more
18 than 10-15 feet without resting for 20-40 minutes.  (AR 137.)  If this
19 were true, it would seem that she would be incapable of going to the
20 beach and spending time in the ocean in Jamaica.  Further, it would
21 seem that she would shy away from such a trip, knowing that it would
22 require her to do things that she was not capable of doing.  *See*,
23 *e.g.*, *Tommasetti,* 533 F.3d at 1040.

24 　　　The ALJ also questioned Plaintiff's testimony based on the fact
25 that her mother claimed that she experienced terrible side effects
26 from her medication and the medical record did not support such a
27 claim.  (AR 20.)  The Court does not find this to be a compelling
28 reason to question Plaintiff's credibility.  Even assuming that the

mother's testimony was exaggerated, or worse, that is not a reason to question Plaintiff's testimony without something more.  Plaintiff never alleged that she experienced terrible side effects and there is no evidence that she told her mother to say that she did.  Absent some connection between the mother's and the daughter's testimony, the Court cannot find that the mother's exaggeration is a valid reason for questioning Plaintiff's testimony.

The ALJ found that Plaintiff's testimony was also undermined by her father's testimony.  (AR 20.)  Here, the Court agrees.  Plaintiff lived with her father and the record discloses that he was present and involved in her life.  According to her father, Plaintiff watches T.V. all day.  (AR 381.)  This contradicts Plaintiff's testimony in both the 2007 and the 2009 hearings that she never watches T.V.  (AR 345, 370.)  Though this may be a small point, it is indicative of someone who is trying to look more deserving of benefits and casts a shadow of doubt on her testimony.

In addition, Plaintiff testified that she tried to kill herself "countless times."  (AR 366.)  She claimed, in fact, that she had been taken for emergency care in 2006 after a suicide attempt.  (AR 367.)  Plaintiff testified that her father knew "to a certain extent" about her suicide attempts.  (AR 378.)  Plaintiff's father, however, testified that they had taken her to the emergency room on just one occasion because they thought "something terrible had happened to her."  (AR 386.)  He did not seem to have any idea that she tried to kill herself at all, never mind countless times.  (AR 386.)  Further, there are no medical records for treatment following a suicide attempt.  These contradictions in the testimony and the medical record also support the ALJ's credibility finding.

Though not delineated as credibility findings, the ALJ also pointed out discrepancies between what Plaintiff claimed that she could and could not do and statements she made to various doctors. (AR 16.) For example, she claimed at times that she could not drive and at other times admitted that she could and, in fact, had driven herself to her medical appointments. (AR 308-09, 318.) These contradictions, too, support the ALJ's overall finding that Plaintiff was not credible.

Though another ALJ might have viewed this evidence differently, the Court's task is not to evaluate all possible outcomes and choose the one it thinks is best. Rather, its task is to review what the ALJ did and where, as here, the ALJ's credibility finding is specific, clear, and convincing, it must be upheld. *Smolen*, 80 F.3d at 1283-84; *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (explaining reviewing court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

ii. <u>Plaintiff's Mother</u>

The ALJ also questioned the veracity of Plaintiff's mother's testimony, which was contained in a report she filled out and submitted to the Agency. (AR 123-31.) He found that her testimony was "inconsistent with the medical evidence." (AR 20.) He noted further that the mother alleged that Plaintiff suffered terrible side effects from her medications but the record did not support these alleged side effects. (AR 20.) Plaintiff argues that this finding was not supported by the record. (Joint Stip. at 27.) The Agency contends that there was no error here. For the following reasons, the Court sides with the Agency.

Lay testimony is competent evidence, which an ALJ is required to consider in determining if a claimant is disabled. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In order to reject it, however, the ALJ need only provide reasons that are germane to the witness. *Dodrill,* 12 F.3d at 919.

Plaintiff's mother noted that doctors had prescribed various medications for Plaintiff "but none has really helped and [they] create terrible side effects." (AR 130.) The ALJ found that there was no evidence of terrible side effects and that this called into question the mother's testimony. (AR 20.) Plaintiff argues that at pages 212 and 214-15 of the medical record there is evidence that she suffered from side effects from her medication. (Joint Stip. at 26-27.) Plaintiff is right. There are notations in the medical charts on these pages listing side effects such as vomiting and nausea. (AR 212, 214-15.) The question that remains is whether, in light of this evidence, the ALJ's finding that there was no evidence of "terrible side effects" is valid and whether it is enough to discount Plaintiff's mother's testimony.

Arguably, nausea and vomiting are not "terrible" side effects of medication. And the medical record, as a whole, supports the ALJ's ultimate finding that these side effects were not so severe. In the more than 100 pages of medical records and reports, side effects are barely mentioned or discussed. In an April 2006 form listing five medications Plaintiff was taking at the time, she noted that the only side effects she was experiencing were drowsiness and headaches. (AR 165.) Thus, the Court cannot say that the ALJ erred in finding that Plaintiff was not experiencing "terrible side effects" from her

medication and that her mother's statement that she was undermined her testimony.  This was a germane reason to question the mother's testimony and is supported by the evidence in the record.  As such, it will be upheld.[1]

### B. The ALJ's Finding That Plaintiff Can Perform Her Past Work As A Cashier

The ALJ determined that Plaintiff was limited to performing simple, repetitive tasks.  (AR 17.)  He also concluded that she could perform her past work as a cashier.  (AR 21.)  The job of a cashier requires the ability to reason at Level 3, meaning that a worker must be able to:

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with

---

[1] In addition to his specific finding that Plaintiff's mother's testimony was not to be believed because of her reference to terrible side effects, the ALJ also relied, it seems, on a general finding that her testimony was inconsistent with the medical evidence.  (AR 20.)  It is not clear whether a generalized finding that lay testimony is inconsistent with the medical record is a sufficient reason for rejecting it.  One line of cases suggests that it is.  *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses.  Inconsistency with medical evidence is one such reason.") (citations omitted).  Another line of cases suggests that it is not.  *See Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record.") (citing *Smolen*, 80 F.3d at 1289).  The Court need not resolve this issue here in light of the fact that it is upholding the ALJ's finding that the mother's testimony was undermined by her claim that Plaintiff suffered terrible side effects from her medications when she in fact did not.

>     problems involving several concrete variables in or from
>     standardized situations.

Dictionary of Occupational Titles ("DOT") 211.462-010.

Plaintiff contends that a restriction to simple, repetitive work is inconsistent with an ability to reason at Level 3. (Joint Stip. at 6.) The Agency disagrees. It argues that the cashier job is classified as "unskilled work" and that someone with Plaintiff's background, i.e., a high school graduate with some college who had worked in skilled positions in the past, is capable of performing it. (Joint Stip. at 9, 11.)

There is not a lot of guidance for the Court to follow on this issue. There is no Ninth Circuit precedent. The Seventh Circuit has found that someone limited to simple, repetitive work can perform Reasoning Level 3 work. *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (finding ALJ did not err in concluding that claimant limited to simple work can perform job requiring Level 3 reasoning). The Eighth Circuit has issued arguably conflicting decisions on the issue, but most recently has determined that a claimant limited to simple, concrete instructions can perform work as a cashier requiring Level 3 reasoning. *See Hillier v. Soc. Sec. Admin.,* 486 F.3d 359, 367 (8th Cir. 2007); *but see Clay v. Barnhart*, 417 F.3d 922, 931 (8th Cir. 2005) (recognizing potential inconsistency between an ability to perform work as cashier and a limitation to work involving simple, concrete instructions). The Tenth Circuit has concluded that Level 3 reasoning is inconsistent with a limitation on simple and routine work and is, instead, more consistent with Level 2 reasoning. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

As the parties point out, there is a conflict between the decisions of the district courts within this district and within this state on this issue. Some district courts have found that Level 3 reasoning is incompatible with simple, repetitive work, while others have found the opposite. And there is nothing in the regulations governing social security cases or the DOT that clearly instructs one way or the other.

In the absence of controlling authority, the Court takes a different approach. First, it notes that the vocational expert testified that her testimony was consistent with the DOT. (AR 387.) She testified that, despite a restriction to simple, repetitive work, Plaintiff could perform her former job as a cashier. (AR 388.) Plaintiff's counsel did not object to this testimony. (AR 388.) Nor did he ask any follow-up questions to inquire into the point he now raises in this appeal. The Court finds these facts significant for four reasons. First, the ALJ was entitled to rely on the vocational expert's testimony that Plaintiff could perform this job despite her limitations. *See Bayliss,* 427 F.3d at 1217-18. Second, the ALJ's conclusion that Plaintiff could perform her past work as a cashier was a step-four finding. At step four, Plaintiff had the burden of establishing that she could not perform this job. *See Berry v. Astrue*, 622 F.3d 1228, 1233-34 (9th Cir. 2010). Yet, she did not present any evidence or argument at the administrative hearing that she was precluded from performing this job because it was beyond her mental capabilities. Third, if the vocational expert's testimony conflicted with the DOT, Plaintiff's counsel had an obligation to say so at the hearing and not wait more than two years to raise the issue. Had he done so, the issue could have been resolved back then or, at

least, the record could have been better developed for review in this court.[2] Fourth, and finally, a plain reading of the definition of Level 3 reasoning suggests that a person with three or four years of college, like Plaintiff (AR 335)--even one who is impaired somewhat due to mental impairments stemming from depression--would have the ability to apply commonsense understanding and deal with problems involving concrete variables to work as a cashier. *See Hillier,* 486 F.3d at 367 (finding claimant limited to simple, concrete instructions who previously worked as cashier can work as cashier despite these limitations). For these reasons, the Court concludes that the ALJ did not err here.

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is affirmed.

IT IS SO ORDERED.

DATED: <u>November 7, 2011</u>.

<u>/s/ Patrick J. Walsh</u>
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\LEON, N 915\memo.opinion and order.wpd

---

[2] Plaintiff was represented by the same law firm that now represents her in the district court, though other lawyers from the firm appeared on her behalf in the administrative hearings. (AR 71-73, 331, 357.) The Court takes notice of the fact that social security lawyers, including lawyers from this firm, are routinely awarded fees in excess of $500 per hour in these cases, sometimes more than $1,000 per hour. Clearly, lawyers commanding these types of fees can be expected to be experts in their field and also expected to vigorously advocate on behalf of their clients.